ACKELINE RATUSHNI *vs.* THE MUTUAL AID UNEM-PLOYMENT FUND OF WATERBURY ET AL.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, JS.

Argued November 3d—decided December 9th, 1937.

*J. Warren Upson,* for the appellants (defendants).

*William K. Lawlor,* for the appellee (plaintiff).

JENNINGS, J.  The plaintiff's head and right side were injured by a fall on a cement staircase at the plant of the respondent employer on January 21st, 1935.  She was attended by Doctor Hinchey, a general practitioner.  She complained of attacks of dizziness and headaches.  To determine the cause of these complaints he had X-rays taken of the skull and on April 5th, 1935, he sent her to an eye specialist, Doctor Jackson.  The latter could find nothing the matter with her eye.  Dr. Hinchey and Dr. Pyle, an orthopedic specialist, agreed that she was in condition to return to work.  On April 11th, 1935, a finding and award was made covering her injury and medical expenses to that date.  Thereafter she did return to work and worked at various occupations for part of the time up to January 31st, 1936, when she went to the Chase Dispensary complaining of her eye.  She was sent to Dr. Good, an eye specialist, who examined her.  He found a small infected erosion on the cornea.  He prescribed for her and treated her at that time and once soon after.  Although told to return, she did not do so.  She had no further medical attention until April 5th, 1936, when she went to Dr. Jackson.  The infection had progressed to such an extent by that time that, in spite of Dr. Jackson's best efforts, she lost practically all of the sight in that eye.

On December 16th, 1936, a hearing was held for the purpose of reopening the award of April 11th, 1935.

The plaintiff was fully heard with her lay witnesses. Doctors Hinchey, Jackson, Bevans and Good also testified. The commissioner made a finding and award dismissing the claim. The plaintiff moved to correct this finding by adding a very large number of subordinate facts for the purpose of securing a reversal of the commissioner's conclusion that there was no causal connection between the original accident and the loss of the eye. In so far as these corrections involved the finding of detailed subordinate facts, the commissioner held that they were either irrelevant to the main issue or were based on disputed testimony. In so far as they related to the main issue, his conclusion as above set forth, the commissioner correctly ruled that this was a medical question.

The trial court held that the finding should have been corrected and remanded the case to the commissioner "for further action and proceedings in accordance with this judgment." The defendant appealed on various grounds, all of which are included in the assignment that the court erred in holding that the commissioner should have corrected the finding.

The memorandum of the trial court indicates its familiarity with the rule that a conclusion of the commissioner, based on conflicting medical testimony, must stand. *Furman* v. *National Dairy Products Corp.*, 123 Conn. 327, 195 Atl. 182. He found that the commissioner erred in refusing to grant the motion to correct in this case because his conclusion was based on a false premise. The point is decisive of the case and the plaintiff's claim, based on the trial court's memorandum, may be stated concretely as follows: The commissioner found that there was no causal connection between the accident and the injury; this conclusion was based on the evidence of Drs. Good and Bevans, who so testified; their testimony was given

on the assumption that no scar tissue was present when the plaintiff was examined by Dr. Jackson six weeks after the accident; the evidence negatives this finding and leaves their conclusion and that of the commissioner without support.

The medical testimony was conflicting. Dr. Jackson had had one case where a breakdown occurred three months after an injury which left no visible scar tissue. Dr. Bevans testified that no breakdown so long after the original accident could have occurrred unless scar tissue had been present at the time of the original examination. Even Dr. Jackson testified that he would not have believed it possible except for his experience with the one case referred to. The inquiry is whether there was evidence from which the commissioner could have found that no scar tissue was present at the time of the original examination. His finding that there was no causal connection between the original accident and the present injury is dependent on this fact. Dr. Jackson himself testified that the presence of scar tissue would have been disclosed by his examination and he was corroborated by Dr. Good. It was for the commissioner to find whether or not scar tissue was present when Dr. Jackson examined the plantiff and he evidently found that none was present. That being so he could accept the testimony of Drs. Good and Bevans. It follows that the conclusion of the commissioner was justified by the evidence and that to overrule this conclusion was error. *Furman* v. *National Dairy Products Corp.,* supra.

The history at the dispensary and given to Dr. Good was that the patient thought she had a foreign body in her eye. This explains her condition and later complications much more simply and reasonably than does the theory of the plaintiff. To review the

latter briefly, it involves an injury in January, 1935, treatment and discharge as cured in April, 1935, without the discovery of any eye injury, a breakdown and recurrence in January, 1936. The commissioner's finding is logical, is fully supported by the medical testimony and must stand.

There is error and the case is remanded to the Superior Court with direction to dismiss plaintiff's appeal from the compensation commissioner.

In this opinion the other judges concurred.